UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DAN MCGUIRE,

        Plaintiff,

    v.

RECONTRUST COMPANY, N.A., et al.,

        Defendants.
_____/

NO. 2:11-CV-2787 KJM-CKD

<u>ORDER</u>

I.    <u>Background</u>

        On October 21, 2011, plaintiff filed a complaint against Bank of America N.A., Recontrust Company, N.A. (Recontrust), Countrywide Home Loans Servicing, L.P., Mortgage Electronic Registration Systems, Inc. (MERS), and The Bank of New York Mellon, as well as twenty Doe defendants,[1] alleging eight claims: (1) violations of California Civil Code § 2923.5; (2) wrongful foreclosure; (3) no contract exists; (4) quiet title; (5) violations of the Truth in

---

[1] The Ninth Circuit provides that "'[plaintiffs] should be given an opportunity through discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Plaintiff is warned, however, that such defendants will be dismissed where "'it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Id.* (quoting *Gillespie*, 629 F.2d at 642). Plaintiff is further warned that Federal Rule of Civil Procedure 4(m), which states that the court must dismiss defendants who have not been served within 120 days after the filing of the complaint unless plaintiff shows good cause, is applicable to doe defendants. *See Glass v. Fields*, No. 1:09-cv-00098-OWW-SMS PC, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v. Does*, No. C 11-01567 LB, 2011 U.S. Dist. LEXIS 109837, at *2–4 (N.D. Cal. Sep. 27, 2011).

Lending Act (TILA), 15 U.S.C. §§ 1601 *et seq.* and Regulation Z, 12 C.F.R. §§ 226.1 *et seq.*; (6) violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601 *et seq.*; (7) fraud; and (8) declaratory and injunctive relief.  (ECF No. 2.)  All the claims arise from the acquisition of and attempt to foreclose on 5770 Fruitvale Road, Newcastle, California.

On December 6, 2011, all named defendants jointly filed a motion to dismiss and to expunge a *lis pendens*, together with a request for judicial notice of two documents and a motion to strike a portion of plaintiff's complaint.  (ECF Nos. 15-17.)  On September 30, 2012, the court denied the motion to dismiss as to plaintiff's claim that the defendants violated Section 2923.5 of the California Civil Code and granted the motion to dismiss, giving plaintiff leave to amend the complaint as to his claims that the defendants violated TILA and RESPA, his claim of fraud, and his claim that no contract exists.

On October 22, 2012, plaintiff filed his First Amended Complaint (FAC), containing five causes of action, apparently against all defendants: (1) violation of California Civil Code § 2923.5; (2) no contract exists; (3) TILA violations; (4) RESPA violations; (5) fraud.  (ECF No. 31.)

On November 8, 2012, defendants filed a motion to dismiss the second, third, fourth and fifth causes of action and a request for judicial notice.  (ECF Nos. 32 & 33.)  Plaintiff has opposed the motion to dismiss and the request for judicial notice.  (ECF Nos. 39 & 40.)  For the reasons discussed below, defendant's motion is granted.

II.  STANDARDS FOR A MOTION TO DISMISS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A motion to dismiss under this rule may also challenge the sufficiency of fraud allegations under the more particularized standard of Rule 9(b) of the Federal Rules of Civil Procedure.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

/////

2

1 Although a complaint need contain only "a short and plain statement of the claim
2 showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)(2)), in order to survive a
3 motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to
4 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949
5 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must
6 include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation"
7 or "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action.'"
8 *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint
9 will survive a motion to dismiss for failure to state a claim is a "context-specific task that
10 requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*,
11 129 S. Ct. at 1950. Ultimately, the inquiry focuses on the interplay between the factual
12 allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King &*
13 *Spalding*, 467 U.S. 69, 73 (1984).

14 In making this context-specific evaluation, this court must construe the complaint
15 in the light most favorable to the plaintiff and accept as true the factual allegations of the
16 complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). This rule does not apply to "'a legal
17 conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986)
18 (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject
19 to judicial notice" or to material attached to or incorporated by reference into the complaint.
20 *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). A court's
21 consideration of documents attached to a complaint or incorporated by reference or matter
22 subject to judicial notice will not convert a motion to dismiss into a motion for summary
23 judgment. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Parks Sch. of Bus. v.*
24 *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir.
25 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally
26 court is limited to face of the complaint on 12(b)(6) motion).
27 /////
28 /////

III. REQUEST FOR JUDICIAL NOTICE

Defendants have asked the court to take judicial notice of five documents: the Deed of Trust, the Assignment of the Deed of Trust, the Notice of Default and Election to Sell, another Assignment of the Deed of Trust, and the Notice of Trustee's Sale, all recorded in Placer County.  ECF No. 33 at 2.

Plaintiff has opposed the request, arguing that the documents are "self-serving documents that [defendants] created, and the contents of which are objectionable.  The truth of the matters asserted therein are hotly disputed in this litigation . . . ."  (ECF No. 40 at 3.)  He argues that it is improper to take judicial notice of documents challenged as inaccurate.  (*Id*. at 4.)  He further argues that even if the court can take judicial notice of the existence of the documents, it cannot take notice of facts in those documents that contradict the allegations of the complaint.

As provided by Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of facts "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Matters of public record are generally subject to judicial notice.  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  Because the documents recorded in Placer County are matters of public record, the court takes judicial notice of these documents.  *See Grant v. Aurora Loan Servs., Inc*., 736 F. Supp. 2d 1257, 1264 (N.D. Cal. 2010) (taking judicial notice of records of county recorder).  A court cannot take judicial notice of disputed facts in the documents.  *Lee*, 250 F.3d at 690.

Plaintiff cannot dispute the existence of these documents, as he has provided many of them as exhibits to his complaint.  He does challenge Miguel Romero's and Rene Friedman's signatures on the Assignments of the Deed of Trust and has provided other examples of the signatures, which he alleges are so different as to show that the signatures at issue here are forgeries.  (ECF No. 31-1 at 23-24 (Romero signature), 30-31 (Friedman signature).)  The court has compared the documents and does not find the signatures to be so markedly different as to
/////

1  support a finding of forgery; the court finds there is not a sufficient dispute as to the authenticity
2  of the documents as to prevent the court from taking judicial notice of them.
3  Moreover, plaintiff argues that Irma Garay did not have the authority to sign the
4  Notice of Default because she does not work for the "true" beneficiary of the deed.  This
5  contention is discussed below, as is plaintiff's claim that MERS lacks the authority to act in this
6  case.
7  The documents covered by defendants' request show the following about 5770
8  Fruitvale Road, Newcastle, California:
9  On April 21, 2004, Dan McGuire, an unmarried man, signed a Grant Deed,
10 granting 5770 Fruitvale Road, to Dan McGuire and Olivia McGuire, husband and wife, as joint
11 tenants.  (ECF No. 33-1 at 23-25.)  This deed was recorded in the Placer County Recorder's
12 Office on April 29, 2004.  *Id*. at 23.)
13 On November 9, 2006, the Placer County Recorder's Office recorded a Deed of
14 Trust (DOT), identifying Dan McGuire (plaintiff) and Olivia McGuire as borrowers, America's
15 Wholesale Lender (AWL) as the Lender, Recontrust as Trustee, and MERS as the beneficiary
16 and nominee for the Lender and the Lender's successors.  (ECF No. 33-1 at 2-3.)  The DOT
17 recited that borrowers had signed a promissory note on October 31, 2006, memorializing that
18 borrowers owed lender $410,000.  (ECF No. 33-1 at 2.)  It provided that "[t]he Note or a partial
19 interest in the Note (together with this security Instrument) can be sold one or more times
20 without prior notice to Borrower" and that "[l]ender, at its option, may from time to time appoint
21 a successor trustee to any Trustee appointed hereunder by an instrument executed and
22 acknowledged by Lender and recorded in the officer of the Recorder . . . ."  (ECF No. 33-1 at 13,
23 15.)
24 On June 27, 2011, an Assignment of the Deed of Trust was recorded in the Placer
25 County Recorder's Office, assigning the DOT to the Bank of New York Mellon, as Trustee for
26 the Certificate holders of the CWABS Inc. Asset-Backed Certificates, Series 2006-22.  (ECF No.
27 33-1 at 31.)  The document was signed on June 14, 2011 on behalf of MERS by a person
28 identified as Miguel Romero by the typewritten name under the signature line and the title

1  "Assistant Secretary."  It was notarized on June 14, 2011 by Notary Public Linda Tasci.  (*Id*. at
2  32.)
3          On June 30, 2011, the Placer County Recorder's Office recorded a Notice of
4  Default and Election to Sell.  It was signed on June 29, 2011 on behalf of Recontrust by a
5  person identified as Irma Garay, Authorized Signer, by the typewritten name under the signature
6  line. (ECF No. 33-1 at 35-36.)
7          On July 5, 2011, the Placer County Recorder's Office recorded a Corporation
8  Assignment of Deed of Trust, transferring the deed to the Certificate holders of the CWABS
9  Certificates Series 2006-22.  It was signed on June 29, 2011 on behalf of MERS by a person
10 identified as Renee Friedman, Assistant Secretary, by the typewritten name under the signature
11 line.  It was notarized on the same day by Notary Public E.L. Howard.  (ECF No. 33-1 at 39.)
12         On October 3, 2011, the Placer County Recorder's Office recorded a Notice of
13 Trustee's Sale, set for October 25, 2011.  There is no indication the sale has occurred.  (ECF No.
14 33-1 at 41.)
15 IV.  ANALYSIS
16         Defendants argue generally, as a threshold matter, that plaintiff has no standing to
17 attack the securitization of his loan and also that plaintiff has not demonstrated the defendants
18 lack the authority to foreclose.  (ECF No. 32 at 12-16.)  Plaintiff responds at length, arguing that
19 he is not suing for breach of the pooling and servicing agreement or challenging the validity of
20 the securitization, and contending that he has standing to attack noncompliance with the
21 requirements for securitization.  The court declines to enter into a lengthy discussion of this issue
22 except in connection with the various causes of action, as there is no separate challenge to the
23 securitization, perhaps in recognition that, "'courts have uniformly rejected the argument that
24 securitization of a mortgage loan provides the mortgagor with a cause of action.'"  *Nguyen v.*
25 *Bank of Am. Nat'l Ass'n*  No. 11–CV–03318–LHK, 2011 WL 5574917, at *9 (N.D. Cal. Nov. 15,
26 2011) ( quoting *Rodenhurst v. Bank of Am.*, 773 F. Supp. 2d 886, 898 (D. Haw. 2011)).
27 "'[S]ecuritization merely creates 'a separate contract, distinct from [p]laintiffs['] debt
28 obligations' under the note, and does not change the relationship of the parties in any way."

*Robertson v. Citibank N.A.*, No. C 12-02996 JSW, 2013 WL 752491, at *3 (N.D. Cal. Feb. 27, 2013) (quoting *Reyes v. GMAC Mortgage LLC*, No. 2:11-CV-100 JCM RJJ, 2011 WL 1322775, at *3 (D. Nev. Apr. 5, 2011)). To the extent that securitization is relevant to plaintiff's claims, the court will consider it in the discussion of the particular claim.

   A.  No Contract Exists

   The basis for this claim remains unclear. In the order dismissing the original complaint, the court gave plaintiff leave to amend to clarify the basis of his claim. (ECF No. 30 at 7-8.) The amended complaint includes a number of disparate claims under the banner of "no contract."

   Initially, plaintiff alleges that when he signed the note and DOT he believed that the funds for the mortgage were coming from AWL, which was the lender, beneficiary, payee and obligee. (ECF No. 31 ¶ 98.) Despite this expectation, plaintiff was really borrowing money from BAC or Bank of America or some other entity. (*Id.* ¶ 101.) He alleges on information and belief that AWL was not the lender but acted as a third party "straw lender," earning fees by renting its name. (*Id.* ¶ 106.) He also alleges that because TILA requires disclosure of the identity of the creditor and the actual amount financed, these are material terms of plaintiff's mortgage loan. He does not argue, however, that the actual amount financed was not disclosed. Because of the omissions there was no meeting of the minds and so no contract, despite the fact that he has taken some action related to loan. (ECF No. 31 ¶ 100.)

   Next, plaintiff alleges that he expected he would borrow money, pay it back and then own the property, while BAC and Bank of America expected he would borrow money, not be able to pay it back, and then defendants would own the property. (ECF No. 31 ¶¶ 101-102.) In addition, BAC and Bank of America expected, but did not reveal to plaintiff, that plaintiff would be unable to repay the loan. (*Id.* ¶¶ 102, 103.) In fact, defendants expected plaintiff to default on the loan so they could reclaim the property. Defendants also anticipated transferring the note to investors immediately after plaintiff signed it. (ECF No. 31 ¶ 103.) Moreover, he lost the benefit of the bargain when he gave the right of non-judicial foreclosure to an entity that was not acting as a true beneficiary under the DOT.

7

Plaintiff then turns to a lengthy discussion of the defendants' alleged widespread predatory lending practices and his attack on the securitization process, finally alleging that "[p]laintiff's participation in the mortgage contract was procured by overt and covert misrepresentations and nondisclosures. The parties did not share a single expectation with respect to any of the terms of the mortgage contract and therefore the contract was void ab initio"; because no enforceable contract was formed, defendants could not lawfully acquire the note and deed of trust. (ECF No. 31 ¶¶117, 118.) He says he is not seeking rescission because the contract never existed, but also says that because of the transfer of money, a "common law obligation arose to someone . . . ." (ECF No. 31 ¶¶ 106, 119).

There are four requirements for the formation of a valid contract in California: (1) parties capable of contracting; (2) their mutual consent; (3) a lawful object; and (4) sufficient consideration. *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc*., 520 F. Supp. 2d 1184, 1193 (N.D.Cal. 2007) (citing CAL. CIV. CODE §§ 1550, 1565). Plaintiff argues there was no contract because there was no meeting of the minds on essential points. Some California courts do talk about a "meeting of the minds" in connection with contract formation: "'[T]here is no contract until there has been a meeting of the minds on *all* material points.'" *Mory v. City of Chula Vista*, No.07CV0462, 2008 WL 360449, at *15 (S.D. Cal. Feb. 11, 2008) (quoting *Am. Employers Group, Inc. v. Employment Dev. Dep't*, 154 Cal. App. 4th 836, 846 (2007) (emphasis in original). Nevertheless, in determining whether there has been such mutual assent the court applies an objective test and does not rely on the parties' "'unexpressed intentions or understandings.'" *Id*. (quoting *Am. Employers Group, Inc.*, 154 Cal. App. 4th at 847). Other courts completely reject the phrase: "'Under the objective test of contract formation, a "meeting of the minds" is unnecessary. A party is bound, even if he misunderstood the terms of a contract and actually had a different, undisclosed intention.'" *Atlas Assurance Co., Ltd. v. McCombs Corp*., 146 Cal. App. 3d 135, 145 (1983) (quoting *Blumenfeld v. R.H. Macy &* Co., 92 Cal. App. 3d 38, 46 (1979)); *see also Fair v. Bakhtiari*, 40 Cal.4th 189, 202 (2006) ("The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe.") (internal

8

citations and quotations omitted); *Ottolini v. Bank of America*, No. C-11-0477 EMC, 2011 WL 8583133, at *5 (Dec. 6, 2011) ("[T]here need not be a subjective meeting of the minds . . . .'") (internal citation & quotation omitted).

The court accepts for purposes of this analysis that the identity of the creditor is a material term of the contract.[2]  Although plaintiff describes his beliefs and expectations in this respect, he does not allege that he made them known to anyone during the time he pursued and secured the loan or signed the loan documents.

Plaintiff has also inadequately pleaded  defendants' alleged beliefs and intentions. Rule 11 of the Federal Rules of Civil Procedure requires a party to plead to the best of his knowledge and with evidentiary support. *Devincenzi v. City of Chico*, No. 2:-11-CV-03268 KJM DAD, 2012 WL 6571006, at *3 (E.D. Cal. Dec. 17, 2012). "If a plaintiff lacks personal knowledge about certain facts, but obtained hearsay or other secondhand information that lead him or her to believe them to be true, those facts can be alleged on 'information and belief.'" *Western Sugar Cooperative v. Archer-Daniels-Midland Co*., No. CV 11-3473, 2012 WL 3101659, at *2 (C.D. Cal. Jul. 21, 2012).  Allegations based on information and belief must still include factual content that make them plausible. *Klohs v. Wells Fargo Bank*, 901 F. Supp.2d 1253, 1260 n.2 (D. Haw. 2012).  Plaintiff sometimes makes claims on information and belief, but fails to include any factual support even suggesting the source of the information or other detail rendering the claims plausible. (*See, e.g.*, ECF No. 31 ¶ 109 ("[o]n  information and belief, Plaintiff's loan was pre-funded by unknown persons/entities from the secondary market . . . .").) On other occasions he makes assertions about defendants' alleged intentions without even

---

[2]  As plaintiff observes, a required disclosure under TILA is the identity of the creditor, who is defined as "a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.  15 U.S.C. § 1635(a).  Nevertheless, it is the identity of the creditor making the disclosures that must be disclosed, 12 C.F.R. § 226.18(a); if there are multiple creditors, there is no requirement that all the identities be disclosed. *King v. State of Cal*., 784 F.2d 910 (9th Cir. 1986).

attempting to explain the source of his knowledge. (*See, e.g.*, ECF No. 31 ¶ 102 ("Defendants. . . expected that Plaintiff would borrow money, would not be able to pay it back, and then Defendants . . . would own the Property.").) His attempts to plead what he characterizes as the parties' differing beliefs on every point of the loan origination and funding process are unavailing.

   B. TILA

In dismissing the original complaint, the court dismissed any TILA rescission claim without leave to amend but allowed plaintiff to amend his damages claim to provide a basis for his claim of equitable tolling of that claim. (ECF No. 30 at 9-10). Title 15 U.S.C. § 1640(e) states: "Any action under this section [creating a claim for damages] may be brought . . . within one year from the date of occurrence of the violation . . . ." The Ninth Circuit has held that any failure to disclose as required by TILA occurs when the loan documents are signed. *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003).

In the First Amended Complaint plaintiff alleges that the hidden and indirect fees, the securitization of the note and the identity of the lender either were not apparent from the face of the loan documents or were concealed; because of the active concealment, "Plaintiff could not have discovered, did not discover, and was prevented from discovering" the TILA violations "[d]espite exercising diligence." (ECF No. 31 ¶¶ 71, 74.) Defendants argue that this is an insufficient basis for tolling.

> A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence. [The plaintiff] carries the burden of pleading and proving fraudulent concealment; it must plead facts showing that [the defendant] affirmatively misled it, and that [the plaintiff] had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts. A fraudulent concealment defense requires a showing both that the defendant used fraudulent means to keep the plaintiff unaware of his cause of action, and also that the plaintiff was, in fact, ignorant of the existence of his cause of action.

*Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (internal quotations and citations omitted); *see also Edstrom v. Ndex West, LLC*, Civ. No. S–10–105 FCD/KJM,

2010 WL 4069482, at *3 (E.D. Cal. Oct. 18, 2010).  Where the basis of equitable tolling is fraudulent concealment, it must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure." *Marzan v. Bank of America*, 779 F. Supp. 2d 1140, 1149 (D.Haw.2011) (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 663 n.2 (9th Cir. 1999)).

Plaintiff does allege that when he began to experience financial difficulties in October 2010, he began to call Bank of America seeking assistance with refinancing, but he was not given aid or information.  (ECF No. 31 ¶¶ 76-82).   He then alleges generally that he "did not know, had no reason to suspect nor did he have the ability to find out that Defendants withheld material information" until he read news reports and got professional help in June 2011.  (ECF No. 31 ¶¶ 83-84).  Plaintiff's attempts to secure a loan modification do not demonstrate diligence in uncovering the alleged TILA violations.  His other, conclusory claims do not support a finding of diligence.

C.  RESPA

Plaintiff alleges that defendants violated 12 U.S.C. § 2607 by charging plaintiff for settlement services in connection with the loan origination that defendants did not actually perform, and by failing to provide a settlement statement with a clear itemization of all the fees. (ECF No.  31 ¶¶ 148-152).  The court dismissed the original complaint because it did not adequately allege that plaintiff was entitled to equitable tolling.

Defendants argue that the amended complaint is also insufficiently pleaded. "[A] claim under § 2607 must be brought within a year after the 'date of the occurrence of the violation . . . .'"  *Pedersen v. Greenpoint Mortg. Funding, Inc*., Civ. No. S-11-642, 2011 WL 3818560, at *7 (E. D. Cal. Aug. 29, 2011) (quoting *Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1117 (E.D.Cal. 2009)).  In this case, the failure to disclose occurred if at all in 2006 when plaintiff secured the loan.  As with his TILA claim, he describes his attempts to modify his loan and then generally alleges he could not have been aware of the RESPA violations because he is "a lay person and not . . . [an] investment banker, securities dealer, mortgage lender, or mortgage broker."  (ECF No. 30 ¶ 154.)  As with the TILA claim, plaintiff has failed to plead
/////

11

1 sufficient facts to support any entitlement to equitable tolling.  This claim is dismissed without
2 leave to amend.

    D.  Fraud

        Plaintiff repeats his allegations that neither the identity of the real lender nor the various kickbacks and fees were disclosed to him and adds that the "real" lender was neither a financial institution nor an entity registered to do business in the state or elsewhere.  (ECF No. 31 ¶¶ 162-163.)  He adds that Recontrust, which filed the foreclosure, has no pecuniary interest in the mortgage, lacks standing to foreclose, has no authority to file affidavits regarding the loan and regularly commits perjury and engages in robo-signing.  (*Id*. ¶ 164.)  In addition, MERS "falsely named itself the beneficiary under the Notice of Default" and the defendants used the void Assignment of the DOT to claim an interest in the note and attempt to sell plaintiff's house.  (ECF No. 31 ¶¶ 165-166.)  The defendants knew that plaintiff's note had been securitized and that the documents they signed and recorded "did not state true recitals of the facts pertaining to who owned the interests in Plaintiff's Note and who had authority to foreclose and sell Plaintiff's Home."  (ECF No. 31 ¶ 167.)

        After these general claims, plaintiff provides a list of three false representations: (1) the Notice of Default states that MERS was the beneficiary of plaintiff's note and that $410,000 is owed to MERS, even though the defendants knew that MERS was not a party to the note; (2) the Notice of Default falsely stated that the Declaration and Demand for Sale had been delivered to Recontrust and was signed by Irma Garay, though she never had personal or firsthand knowledge of the information in the instrument because she did not work for the CWABS 2006-20 Trust and the Trust has not experienced a loss from plaintiff's loan; (3) the declaration attached to the Notice of Default is false because no one attempted to contact plaintiff.

        Defendants argue that any claims of fraud relating to the loan origination are barred by the statute of limitations, that courts as noted above have rejected challenges to securitization, and that the allegations fail to state a claim.

/////

A claim of fraud has five elements: (1) the defendant falsely represented, concealed or failed to disclose a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably and reasonably relied on the representation; and (5) the plaintiff suffered resulting damages. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996); *Ali v. Humana, Inc*., No. 12–cv–00509–AWI–GSA, 2012 WL 2376972, at *5 (E.D.Cal. June 22, 2012); *SCC Acquisitions Inc. v. Cent. Pac. Bank*, 207 Cal. App. 4th 859, 864 (2012). To establish fraud through concealment, plaintiff must show that defendant had a duty to disclose the concealed facts. *OCM Principal Opportunities Fund v. CIBC World Mkts. Corp*., 157 Cal. App. 4th 835, 845  (2007).

In California, the statute of limitations for fraud claims is three years. CAL. CIV. PROC. CODE § 338(d) (establishing a three year statute of limitations for actions "on the ground of fraud or mistake," which does not accrue "until the discovery . . . of the facts constituting the fraud"). This discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Norgart v. Upjohn Co.*, 21 Cal .4th 383, 397 (1999). Under the rule, "[a] plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988). A party is deemed to have discovered the fraud when it "'has reason at least to suspect the factual basis for its elements." *Fox v. Ethicon Endo–Surgery, Inc*., 35 Cal. 4th 797, 807 (2005) (quoting *Norgart,* 21 Cal. 4th at 398)). To rely on a claim of delayed discovery, a plaintiff must explain why the facts could not have been discovered earlier even in the exercise of reasonable diligence and must identify how and when plaintiff discovered the fraud. *E-Fab, Inc. v. Accountants, Inc. Serv.*, 153 Cal. App. 4th 1308, 1319 (2007); *Briosos v. Wells Fargo Bank*, No. C 10–02834 LB, 2011 WL 1740100, at *4 (N.D.Cal. May 5, 2011); *but see Bonds v. Nicoletti Oil*, Inc., No. CV–F–07–1600 OWW/DLB, 2008 WL 2233511, at *7–8 (E.D.Cal. May

28, 2008) (questioning whether California pleading standards apply, but finding it plaintiff's burden to plead facts supporting delayed discovery).

### i. Statute of Limitations

As noted above, plaintiff alleges that he did not discover any fraud relating to the loan origination until 2011, when he read news accounts and consulted counsel. (ECF No. 31 ¶¶ 83-84.) This does not satisfy his burden of pleading delayed discovery.

### ii. The Role Of MERS

In identifying the first false representation, plaintiff alleges that MERS has no authority to act as a beneficiary and in the second alleges that Garay does not act for the "true" beneficiary, which is the CWABS 2006-22 Trust.

This court heretofore has agreed with the majority of courts, which have rejected challenges to MERS's status as beneficiary of a deed of trust and the authority to act flowing from that status. *Wadhwa v. Aurora Loan Serv. LLC*, Civ. No. S–11–1784 KJM KJN, 2012 WL 762020, at *16-17 (E.D.Cal. Mar. 8, 2012); *see also Herrera v. Fed. Nat'l Mortg. Ass'n.*, 205 Cal. App. 4th 1495, 1498 (2012) ("MERS, as nominal beneficiary, has the power to assign its interest under a deed of trust."); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1040 (9th Cir. 2011) ("MERS relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS."). Plaintiff has presented nothing that persuades the court to revisit the issue. Accordingly, plaintiff's first and second false representations claims are dismissed without leave to amend.

### iii. The Alleged Falsity in the Section 2923.5 Notice

Plaintiff also alleges that defendants falsely claimed they attempted to contact plaintiff about the pending foreclosure when in fact that first contact did not occur until after the declaration was filed. He has not alleged, however, that he justifiably and reasonably relied on this claim; instead he alleges that he relied on various statements the defendants made during his calls to them about refinancing his loan. (ECF No. 31 ¶ 185.) He has not adequately pleaded this claim.

/////

As plaintiff has been given an opportunity to amend after the court had noted prior deficiencies, and has not been able to cure the inadequacies, the court finds that granting further leave to amend the claims attacked by defendants' motion is not warranted. It dismisses these claims without leave to amend. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (recognizing that the district court's discretion to deny leave to amend when plaintiff has previously been given leave to amend and has failed to add the necessary particularity to the claims).

IT IS THEREFORE ORDERED that:

1. Defendants' motion to dismiss is granted; and

2. Plaintiff's second amended complaint, restricted to the claim that defendants have failed to comply with California Civil Code § 2923.5, is due within twenty-one days of the date of this order.

DATED: July 24, 2013.

_____
UNITED STATES DISTRICT JUDGE